```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

|  |  |
|---|---|
| ROSARIO RUIZ, | : |
|  | : |
|    plaintiff, | : |
|  | : |
| v. | :   CASE NO. 3:19-cv-00389(RAR) |
|  | : |
| NANCY BERRYHILL[1], | : |
| ACTING COMMISSIONER | : |
| OF SOCIAL SECURITY, | : |
|  | : |
|    defendant. | : |

**RULING ON PENDING MOTIONS**

Rosario Ruiz ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated January 7, 2019.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. #16-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #20-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is GRANTED and the Commissioner's motion to affirm is DENIED.

---

[1] Andrew Saul is the new Commissioner of Social Security and has been made a party to this actin automatically.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, the decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on March 22, 2012. (R. 166.)[4] Plaintiff alleged a disability onset date of July 1, 2007. (R. 166.) Plaintiff's disability onset date was later amended to March 5, 2013. (R. 1281.) At the time of application, plaintiff alleged that she suffered from depression, high blood pressure, hypothyroidism, asthma, discoloring skin, arthritis, systemic lupus

---

Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[4] The Court cites pages within the administrative record as "R. ___."

erythematosus, pain in joint, and allergic rhinitis.  (R. 60.) The initial application was denied on July 11, 2012, and again upon reconsideration on October 22, 2012.  (R. 108-115, 116-121).  Plaintiff then filed for an administrative hearing which was held by ALJ Deirdre Horton on November 19, 2012.  (R. 27-45.)  The ALJ issued an unfavorable decision on December 5, 2013.  (R. 6-22.)  On February 21, 2014, plaintiff sought a review by the Appeals Council, which was denied on April 17, 2015.  (R. 1-5.)

Plaintiff then filed for judicial review and the claim was remanded on April 4, 2016, for a second ALJ hearing.  (R. 800.) A hearing was held before ALJ Horton on May 30, 2017.  (R. 751-791.)  ALJ Horton issued an unfavorable decision on July 11, 2017.  (R. 725-744.)  Plaintiff again sought judicial review and the claim was remanded on April 3, 2018, for a third hearing. (R. 1328.)  A hearing was held before ALJ Eskunder Boyd (hereinafter "ALJ") on December 10, 2018.  (R. 1300-27.)  The ALJ issued an unfavorable decision on January 7, 2019.  (R. 1278-92.)  Plaintiff then filed this action seeking judicial review.  (Dkt. #16-2.)

## DISCUSSION

Plaintiff asserts that the ALJ's opinion is not supported by substantial evidence; the ALJ violated the treating physician rule by assigning little weight to the opinions of Doctors

5

Klufas and Camacho; and the ALJ improperly examined plaintiff's assertions of pain.  (Pl. Br. 12.)  Based on the following, the Court finds that the ALJ violated the treating physician rule.  The Court therefore remands the ALJ's decision without considering plaintiff's remaining assertions.

**I.  The ALJ Violated the Treating Physician Rule**

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule stipulates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must

6

specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527.  It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing Burgess, 537 F.3d at 129)

7

(alteration in original).  The ALJ may not simply substitute his own judgment for that of the treating physician, and failure to provide good reasons for the weight given to a treating physician's opinion is grounds for remand.  Id.

The ALJ afforded the opinions of plaintiff's treating physicians, Doctors Klufas and Camacho, little and partial weight, respectively.  (R. 1289.)  The ALJ assigned Dr. Klufas' opinion little weight because it failed to provide specific functional limitations.  (R. 625-27, 1289.)  The ALJ assigned Dr. Camacho's opinion partial weight because the ALJ determined that Dr. Camacho's determination that plaintiff needed a highly structured setting was contradicted by plaintiff's independent living situation.  (R. 1271-74, 1289.)

Because the ALJ afforded the opinions of plaintiff's treating physicians less than controlling weight, the ALJ was required to provide good reason for his decision to do so.  Greek, 802 F.3d at 375.  The ALJ failed to provide good reason.  First, the ALJ did not examine *any* of the factors set forth in 20 C.F.R. § 404.1527.  While an ALJ is not required to explicitly cite to the treating physician rule or its factors, the ALJ must substantively reference the rule and provide good reason for not assigning a plaintiff's treating physician controlling weight.  Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).

The ALJ failed to reference the treating physician rule in substance. Notably, the ALJ did not even note the treating relationship of Dr. Klufas or Dr. Camacho. (R. 1289.) The ALJ merely gave very brief conclusory explanations for rejecting each opinion.[5] While the ALJ may provide good reason for his decision not to afford a treating physician controlling weight in a short analysis, a short analysis with no substantive or even attenuated reference to the 20 C.F.R. § 404.1527 factors cannot establish good reason. Colantuono v. Berryhill, No. 18-cv-7282 (VSB) (RWL), 2019 U.S. Dist. LEXIS 131784, *27 (S.D.N.Y. Aug. 5, 2019).

Second, the ALJ misstated Dr. Camacho's opinion which, when stated correctly, is not inconsistent with the record. The ALJ assigned Dr. Camacho's opinion partial weight because Dr. Camacho determined that plaintiff required a highly structured setting to diminish her mental symptoms. (R. 1289.) The ALJ determined that such a limitation was inconsistent with plaintiff's independent living situation and plaintiff's other

---

[5] With respect to Dr. Klufas, the ALJ stated that "[t]his assessment does not provide specific functional limits. As such, it does not garner much weight." (R. 1289.) With respect to Dr. Comacho, the ALJ stated "[w]hile the undersigned accepts that the claimant has some limited, but overall fair ability to perform work tasks, the undersigned does not accept that the claimant requires a highly structured setting to diminish her mental symptoms. That does not relate to the claimant's independent living and is also contrasted by the notation for only moderate limitations, noted elsewhere in the questionnaire. (R. 1289.)

9

limitations as addressed in the opinion.  (R. 1289.)  However, Dr. Camacho actually checked a box that states that plaintiff "relies on ongoing medical treatment, mental health therapy, psychological support, or a highly-structured setting to diminish the symptoms or signs of . . . her mental disorder."  (R. 1274) (emphasis added).

Plaintiff's use of ongoing medical treatment or mental health treatment to diminish her symptoms is not inconsistent with the record.  Indeed, the record establishes that plaintiff's medical providers continually recommended follow up medical and mental health treatment to diminish her symptoms.  (R. 522, 622–23, 669, 670, 724, 1271.)  The ALJ's narrow reading of Dr. Camacho's evaluation is in error and forecloses the alternative interpretations that are consistent with the record.  To the extent the ALJ was confused as to whether plaintiff required a highly structured setting only, rather than any of the other items listed, the ALJ should have contacted Dr. Camacho for clarification.  Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (the ALJ must recontact a treating physician when the opinion is vague).

The Commissioner's Brief fails to address plaintiff's argument that the ALJ violated the treating physician rule.  Rather, the Commissioner argues that because substantial evidence supports the ALJ's determinations as to the weight

10

assigned to each opinion, there is no need for the Court to examine whether the ALJ committed a legal error. (Def. Br. 9-13.)

The Commissioner argues that it is legally sufficient if substantial, but uncited, evidence in the record supports the ALJ's assessment of the weight that was assigned to each opinion. The Commissioner also argues that the ALJ's decision to afford greater weight to the opinion of another physician that is inconsistent with the treating physician's opinion is *per se* substantial evidence supporting the determination that the treating physician's opinion deserves less than controlling weight. The Commissioner's arguments directly contradict 20 C.F.R. § 404.1527 and years of Second Circuit precedent which require the ALJ to explicitly state his or her reasons for affording a treating physician less than controlling weight. Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009); Greek v. Colvin, 802 F.3d 370, 375-376 (2d Cir. 2015).

Further, the Commissioner is incorrect that plaintiff improperly portrays her argument as violating the treating physician rule in order to gain a more favorable standard of review. (Def. Br. 13.) Where the ALJ affords a treating physician less than controlling weight, the ALJ "must specifically explain the weight that is actually given to the opinion." Schrack, 608 F. Supp. 2d at 301 (citing Schupp, 2004

11

WL 1660579, at *9).  This requires the ALJ to "'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  Greek, 802 F.3d at 375 (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)) (alteration in original).

The ALJ assigned plaintiff's treating physicians' opinions less than controlling weight.  Thus, the treating physician rule required the ALJ to "explicitly consider" the 20 C.F.R. § 404.1527 factors.  Greek, 802 F.3d at 375.  Plaintiff's properly portrayed her argument.

Therefore, because the ALJ did not comprehensively set forth his reasons for the weight assigned to the opinions of Dr. Klufas and Dr. Camacho by examining the 20 C.F.R. § 404.1527 factors either explicitly of substantively, the ALJ violated the treating physician rule.  The Court therefore remands so that the ALJ may appropriately weigh these opinions.

**II.  The Court Will Not Consider Plaintiff's Remaining Challenges as to Whether the ALJ Improperly Examined Plaintiff's Assertions of Pain or Whether Substantial Evidence Supports the ALJ's Decision.**

In light of the Court's findings above, the Court need not reach the merits of plaintiff's remaining arguments.  Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling.  On remand, the Commissioner will address the other claims of error

not discussed herein.[6]

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #16-2) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #20-1) is DENIED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 20th day of July 2020, at Hartford, Connecticut.

```
            /s/
Robert A. Richardson
United States Magistrate Judge
```

---

[6] The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to evaluate the opinions of plaintiff's treating physicians in accordance with the Treating Physician Rule.